SIMPLEX RAILWAY APPLIANCE CO. v. WANDS et al.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1902.)

No. 1,597.

1. PATENTS—CONSTRUCTION—QUESTION FOR COURT—PAROL EVIDENCE.
   While the construction of a patent, and the proper limits which should be imposed on the claims, is a question for the court, to be

determined from the patent itself and the language of the claims, yet parol evidence is admissible to show the state of the art, and as bearing on the manner in which the doctrine of mechanical equivalents should be applied to aid the court in such construction.

**2. SAME—PLEADING—DEMURRER.**

Where a bill alleges, in positive terms an interference between patents, and on demurrer to the bill and profert of the patents it does not appear that they are so dissimilar that no evidence as to the state of the art or mechanical equivalents can be introduced to show their identity, the demurrer should be overruled.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

The Simplex Railway Appliance Company, the complainant below and the appellant in this court, is the owner of letters patent No. 565,481, issued August 11, 1896, to Waldo H. Marshall, as assignor to William V. Kelley, and is also the owner of letters patent No. 593,410, issued November 9, 1897, to Carl E. Bauer; assignor to William V. Kelley. John C. Wands and the American Steel Foundry Company, the defendants below and the appellees here, are the owners of letters patent No. 624,276, dated May 2, 1899, issued on that day to John C. Wands. All of these patents relate to improvements in car truck bolsters. The appellant exhibited its bill of complaint against the appellees under the provisions of section 4918, Rev. St. U. S., charging, in substance, that claim 1 of patent No. 624,276 (hereafter termed "Wands' Patent") was for substantially the same mechanical device as that invented by Marshall, and patented by claims 1 and 2 of patent No. 565,481 (hereafter termed the "Marshall Patent"); also that claim 9 of Wands' patent was for substantially the same mechanical device as that invented by Bauer, and patented by claim 3 of letters patent No. 593,410 (hereafter termed the "Bauer Patent"); and that said claims 1 and 9 of Wands' patent were wrongfully granted. Claims 1 and 2 of Marshall's patent are as follows: "(1) In a truss for car truck bolsters, the combination with a commercial rolled channel-iron compression member, and a flat-plate tension member bent up at each end of said compression member, and passing between the flanges of the same, of a support for separating said compression and tension members at a point between their ends, arranged and combined substantially as shown and described. (2) In a bolster for car trucks, the combination with a commercial rolled channel-iron compression member of a flat-plate tension member and a king post, said tension member being bent up at each end of said compression member, after passing between the flanges of the same, in a manner substantially as shown and described." Claim 1 of Wands' patent is as follows: "(1) The combination with a commercially made compression member of channel-beam form of a tension member bent at its ends to engage the ends of the channel-beam compression member and a strut, substantially as described." Claim No. 3 of the Bauer patent is as follows: "(3) In a bolster, the combination with its compression member, tension member, and middle support of a strengthening piece arranged between the end of the compression member and the bent-up portion of the tension member, and having its ends projecting out over the flanges of said compression member, substantially as described." Claim No. 9 of Wands' patent, which is alleged to cover the same mechanical device as claim 3 of Bauer's patent, is as follows: "(9) The combination with the compression member of head blocks arranged at the ends thereof, and which extend outwardly beyond said compression member, a tension member whose ends are bent around said head blocks, and thence extend inwardly and overlap the ends of the compression member, and rivets for securing the ends of the tension and compression members together, substantially as described." Cuts taken from the specifications of the several patents appear on the following pages. Fig. 1 represents a section of the Marshall device. Fig. 2 represents a

section of a car bolster made in accordance with the Bauer patent. Figs. 3 and 4 represent sections of a car bolster made in accordance with the specification of Wands' patent. The defendants below, who are the appellees here, demurred to the bill for the reason, in substance, that it appeared from the face of the bill and an inspection of the several patents, of which profert was made, that claims 1 and 9 of Wands' patent, which was junior in point of date to the other patents owned by the complainant, did not cover the same mechanical device as the Marshall and Bauer patents, and that there was no interference, as alleged in the bill. The trial court adopted that view, and dismissed the bill. The complainant has appealed from that order.

Charles C. Linthicum and Otto R. Barnett (George S. Grover, Charles K. Offield, Henry S. Towle, and James H. Raymond, on the brief), for appellant.

Paul Bakewell and Frederick R. Cornwall, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Counsel for the respective parties agree upon the following propositions, which are well established by authority, namely: That upon a bill of this character, filed under section 4918 of the Revised Statutes of the United States, the first question to be determined is whether the patents involved are interfering patents, since the right to relief is grounded on the fact of interference; that patents do not interfere, within the meaning of the patent law, unless the claims of the respective patents, or some of them, cover the same mechanical device or combination; that it is the claim of a patent, and the claim only, when properly construed, which determines the thing patented; and that it may happen that the structure described in one patent will infringe the claims of another patent, although the patents are not interfering patents, within the meaning of the statute. Gold & Silver Ore Separating Co. v. United States Disintegrating Ore Co., 6 Blatchf. 307, 10 Fed. Cas. 539 (No. 5,508); Manufacturing Co. v. Craig (C. C.) 49 Fed. 370, and cases there cited.

The important question in the case, and the one concerning which there is a real controversy, is whether a court can or ought to say, as a matter of law, on an inspection of the Marshall, Bauer, and Wands patents, that the claims of those patents, quoted above, do not cover the same invention, and that there is and can be no interference between the patents, although the bill of complaint contains an express averment to the contrary. The invention or combination covered by the claims is to be ascertained, as a matter of course, by a proper construction thereof, and it may be conceded to be the province of the court to construe the claims, giving to each its due scope and effect. But when the court enters upon the discharge of that duty it is not necessarily limited to the language of the claims and specifications, but may take into consideration certain extraneous facts. For example, it may have recourse to the testimony of experts to ascertain the meaning of technical words or phrases, if any such are employed, or to ascertain the difference between or the identity of the devices, or to obtain a better understanding of a drawing or model or the character and operations of the devices; and, generally, a court may avail itself of the testimony of experts to acquire a knowledge of all the facts pertaining to an art to which a given patent belongs, and a full understanding of the progress that had been made therein at the time the patent was issued. Winans v. Railroad Co., 21 How. 88, 100, 101, 16 L. Ed. 68. Such testimony frequently has an important influence upon the construction of the claims of a patent, either enlarging or restricting their scope. The adjudged cases afford many illustrations of the fact that proof of the state of the art has an important bearing upon the manner in which the doctrine of mechanical equiva-

lents is applied, and also in determining to what extent, if any, limitations should be placed upon the mere wording of a claim. McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Machine Co. v. Lancaster, 129 U. S. 263, 274, 9 Sup. Ct. 299, 32 L. Ed. 715; Miller v. Manufacturing Co., 151 U. S. 186, 187, 14 Sup. Ct. 310, 38 L. Ed. 121; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 561, 106 Fed. 693; Railway Co. v. Godehard, 19 U. S. App. 360, 400, 8 C. C. A. 265, 59 Fed. 776; McClain v Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Walk. Pat. (3d Ed.) § 184.

Moreover, it is a well-known fact that proceedings taken in the patent office, while an application for a patent is under consideration, sometimes have much effect in determining the scope which shall be given to the claims of a patent. Sutter v. Robinson, 119 U. S. 530, 7 Sup. Ct. 376, 30 L. Ed. 492; Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67; Brill v. Car Co., 33 C. C. A. 213, 90 Fed. 666. While it is true, therefore, that it is the function of the court to construe patents as well as all other written instruments, yet it cannot be gainsaid that many facts dehors the patent, of which the court cannot take judicial notice, may with great propriety be proven to enable it to reach a right conclusion. In the construction of any contract a court is generally entitled to be advised, by testimony, of the situation and the relation of the parties thereto when it was executed, to enable it to decide with more certainty what was the real purpose and intent of the agreement. It is sometimes said that a court should aim to place itself, as nearly as possible, in the situation which the parties to an agreement occupied when it was entered into, and, if this is so as respects the construction of ordinary written instruments, with much greater truth may it be said that, in construing the claims of a patent which deals with mechanical devices with which courts are often unfamiliar, they ought to be very sure, not only that they have a clear comprehension of the language and meaning of the claims and the operation of the patented device, but that they are well advised of the state of the particular art at the time the patent was granted. Evidence which throws any light on this subject ought not to be excluded when the scope to be given to the claims of a patent is the subject for consideration, except in those cases, which may sometimes arise, where the device is very simple and easily comprehended, and the art to which it relates is well understood, so that the introduction of evidence of the kind above indicated would be a work of supererogation. In most cases, therefore, the question whether patents interfere or contain interfering claims is a mixed question of law and fact, because the parties have the right to introduce testimony to enable the court to correctly determine what mechanical device or contrivance is in fact comprehended by the claims, and what are the legal rights thereby granted.

Turning to the Marshall and Wands patents, it will be observed that there is a marked similarity in the mechanical structures described in the two patents. Each is a car bolster consisting fundamentally of a truss. Each has a compression member, a tension member, and a support intermediate the ends of the compression member, in the

Marshall patent termed a "support" and a "king post," and in the Wands patent a "strut." In each structure the tension member bends around the ends of the compression member so as to receive the thrust of the compression member and relieve the bolts, by which they are held together, of the shearing force that would otherwise be exerted. It is true that in Wands' patent head blocks are provided, against which the ends of the compression member abut, and around which the ends of the tension member are bent before they are bolted to the compression member; but it will be observed that, with the improvement added by Bauer to the Marshall structure as at first conceived, "strengthening pieces," so termed (vide Fig. 2), were placed on each end of the compression member so as to overlap them, against the shoulders of which the ends of the compression member likewise abut, and around which the ends of the tension member are bent, and then bolted to the compression member. It requires but a glance to see that there is a marked resemblance between these structures. Indeed, the resemblance is such as to excite grave doubts, on a superficial examination, whether the alleged conflicting claims are consistent and each valid. The lower court held that claim 1 of Wands' patent does not conflict with claims 1 and 2 of the Marshall patent, because Marshall expressly limits himself to a flat tension member, which passes, as it nears the ends of the compression member, between the flanges of the latter member, which is made of channel iron, while Wands does not thus limit his claim. But, if we look carefully at Wands' specification and drawings, it will be seen that his head block has, on the underside, a depression or channel along which the tension member passes, and that this groove or channel holds the tension member in place precisely as the flanges of the compression member hold it in the Marshall structure. Now, it may well be that the state of the art to which this patent appertains, when fully developed, will prove to be such that Wands must be limited to the precise construction indicated in his specifications and drawings, notwithstanding the broad language of his claim, especially as his claim contains the words "substantially as described." And in that event the further inquiry would be pertinent, whether the two combinations claimed and patented, the one by Marshall and the other by Wands, are not substantially the same. It is manifest that Wands, in constructing his car bolster, has merely cut off a section of the compression member and inverted it, and termed it a head block, making a channel for the tension member on the bottom of the head block, instead of utilizing the flanges of the compression member for such a channel.

In his comparison of claim 3 of the Bauer patent with claim 9 of the Wands patent, the learned trial judge was forced to conclude that by the use of the head block Wands attained the same result which Bauer attained by his "strengthening piece," and that conclusion is inevitable, since the object of both patentees appears to have been to prevent the end of the compression member from splitting or giving way under an excessive load, and at the same time to lessen somewhat the convexity of the tension member where it is bent to engage the ends of the compression member. The lower court was of the

opinion, however, that the means employed by Wands to attain the desired result were essentially different from those employed by Bauer, and in that respect it called attention to the fact that Bauer placed his "strengthening piece," which is wider than the web of the compression member and extends over the flanges, on the top thereof, and also constructed it with a shoulder overlapping the end of the compression member to receive its thrust, while in Wands' device the compression member rests on the top of the head block and abuts against its shoulder. Attention is also called to the fact that the compression member rests on three vertical ribs in the head block instead of upon a solid block (vide Fig. 4). This constitutes the sole difference in the means employed to attain the same object. It will be observed, however, that claim 9 of Wands' patent does not specify a head block having three vertical ribs, and if the head block was made solid it would respond to the language of the claim as well as if made with ribs. Counsel for the appellees further lay some stress on the fact that claim 9 of Wands' patent makes no mention of a "middle support" to the bolster, such as Bauer specifies in his third claim, but as the bolster, to which Wands likewise refers, is fundamentally a truss, it would seem that a "middle support" for the truss, which he terms a "strut," ought to be implied. The result is that if Wands' head block, in view of the state of the art and the functions which it performs, be regarded as the mechanical equivalent of Bauer's "strengthening piece," the two claims now under consideration cover substantially the same combination, and hence interfere.

We would not be understood, however, as expressing a definite opinion upon the question whether the claims of the patents in question do in fact interfere. That is a question which does not arise, necessarily, on this appeal, because the case passed off on a demurrer to the bill which expressly alleged interference. Its contention in this court is that by sustaining the demurrer and denying its right to introduce evidence as respects the state of the art and other facts which it deemed material to a correct construction of the claims of the patents the trial court erred. For reasons which have been sufficiently indicated by what has already been said, we feel constrained to concur in that view. The case, in our judgment, does not belong to the class of cases where, notwithstanding an express allegation that certain claims of patents interfere, a trial court can say, on an inspection of the patents, that it is impossible to sustain the allegation by any evidence which can be adduced, and unless such was the case the demurrer should have been overruled. The averment that certain claims of Wands' patent cover substantially the same inventions previously patented to Marshall and Bauer was a statement of an ultimate conclusion of fact, such as is permissible in good pleading, and in the present instance the complainant was entitled to substantiate the charge, if it could, by other evidence besides the patents of which it made profert.

The decree below, dismissing the bill of complaint, is accordingly reversed, and the cause is remanded to the circuit court, with directions to overrule the demurrer to the bill.