## GENERAL CHEMICAL CO. v. BLACKMORE.

(Circuit Court, S. D. New York.    November 20, 1907.    On Settlement of Final
Decree, November 27, 1907.)

1. PATENTS—INTERFERENCE SUITS—SCOPE OF DECISION.

In a suit under Rev. St. § 4918 [U. S. Comp. St. 1901, p. 3394], for relief against an alleged interfering patent, upon the establishment of an interference, it is the duty of the court to investigate and decide any question concerning the validity of either of the patents raised by the pleadings in the case.

2. SAME—INTERFERENCE—VALIDITY OF REISSUE.

The Blackmore reissue patent, No. 11,995 (original No. 686,022), for a process of making sulfuric anhydrid, claims 6 to 11, inclusive, which were added to those of the original patent, cover the prior invention disclosed by the Knietsch patent, No. 652,119, and are void for interference as against such patent. Such reissue is also wholly void as not authorized by Rev. St. § 4916 [U. S. Comp. St. 1901, p. 3393], because the original patent was not invalid for defective or insufficient description or claims, and because the reissue, moreover, seeks to cover an entirely different alleged invention, namely, that of the Knietsch patent.

In Equity.    On final hearing on bill to set aside and declare void certain claims of defendant's patent as interfering.    Action brought under section 4918, Rev. St. [U. S. Comp. St. 1901, p. 3394], and the bill further prays that defendant's patent, being a reissue, be declared void under section 4916.

Briesen & Knauth, for complainant.
Charles S. Jones, for defendant.

HOUGH, District Judge.    The complainant is the owner by assignment of letters patent No. 652,119, issued June 19, 1900, for a "method of making sulfuric anhydrid," hereinafter called the "Knietsch patent."    Defendant is the owner of reissue No. 11,995, granted May 27, 1902, whereof the original patent was No. 686,022, dated November 5, 1901, and both the original and reissue are for a "process of making sulfuric anhydrid," and are hereinafter spoken of as the Blackmore patent and reissue.

The first two claims of the Knietsch patent are as follows:

"1. The process of making sulphuric anhydride which consists in passing a gas containing sulphur dioxide and oxygen through a chamber containing a contact substance while removing from the contents of said chamber excess of heat due to the reaction, substantially as described.

"2. The process of making sulphuric anhydride which consists in passing a gas containing sulphur dioxide and oxygen through a chamber containing a contact substance while maintaining in said chamber a temperature which at the hottest part of said chamber is between the composing and decomposing temperature of the sulphuric anhydride being formed, substantially as described."

And the last six claims of the Blackmore reissue are as follows:

"6. The process of making sulfuric anhydrid, which consists in oxidizing sulfur dioxid while maintaining the temperature below the dissociating-point of sulfur trioxid, substantially as described.

"7. The process of producing sulfuric anhydrid, which consists in conveying sulfur dioxid in contact with an oxidizing agent at a temperature below the dissociating-point of sulfur trioxid, substantially as described.

"8. The process of making sulfuric anhydrid, which consists in subjecting sulfur dioxid to the action of an oxidizing agent while maintaining the temperature below the dissociating-point of sulfur trioxid, substantially as described.

"9. The process of making sulfuric anhydrid, which consists in oxidizing sulfur dioxid and maintaining the temperature below the dissociating-point of sulfur trioxid by refrigeration, substantially as described.

"10. The process of making sulfuric anhydrid, which consists in uniting sulfur dioxid with oxygen while maintaining the temperature between the combining and dissociating point of sulfur trioxid by controlled heat and refrigeration, substantially as described.

"11. The process of making a compound composed of one atom of sulfur and three atoms of oxygen which consists in uniting substances forming the compound while maintaining the temperature below the dissociating-point of sulfuric anhydrid by refrigeration, substantially as described."

Before application made for the patents in suit or any of them, it appears that there were two well-known methods of making sulfuric anhydrid. The chamber process consisted essentially of permitting sulfur dioxid, when introduced into a chamber or retort, to extract the necessary additional atom of oxygen from a substance therein contained, with the result that the dioxid became trioxid, the oxidizing substance undergoing by this chemical process both a chemical and a physical change. The other, or contact, process, consisted essentially in introducing sulfur dioxid and free oxygen (i. e., a gaseous oxidizing agent) into contact with an unchanging or catalytic substance, resulting in the union of the sulfur dioxid and oxygen into sulfuric anhydrid without, so far as known, any change either chemical or physical taking place in the catalytic material. Prior to Knietsch's invention, the chamber process was both scientifically and commercially practiced and practicable, while the catalytic process, though scientifically approved, was not commercially successful. Since Knietsch's invention, it is apparently admitted that the catalytic method has become commercially supreme, because this inventor ascertained that the high temperature resulting from the chemical reaction on union between oxygen and sulfur dioxid was the true cause of the absence of commercial success; and it therefore follows that the essence of Knietsch's patent consists in temperature control at the time and place of reaction, as claimed in the foregoing extract from his patent.

The nature of Blackmore's reissue is to be understood only from an examination of his original patent and the claims thereof and the earlier claims of his reissue which reproduce the latter. By these claims Blackmore asserted title to a modification of the chamber process, i. e., reoxidization of a metallic oxid from which the necessary atom of oxygen had been extracted by sulfur dioxid meeting the same in a retort, accompanied by refrigeration at the time and place of chemical action between the dioxid and the metallic oxid. It does not appear that the refrigeration was to be constant, but only to be applied if necessary, for, as stated in his patent, Blackmore suggests that, "if metallic oxid heats too rapidly during reaction, it may be refrigerated to keep below dissociating point of sulfuric anhydrid." It appears to be proven, therefore, that Knietsch claims and introduced a definite and stated improvement in the catalytic method—i. e., temperature control—and that Blackmore by his patent and the earlier claims of his reis-

sue introduced a definite and stated modification of the chamber process —i. e., reoxidization of the metallic oxid after reaction with sulfur dioxid accompanied by refrigeration if necessary.

It is admitted by Blackmore that the quoted claims of his reissue cover the catalytic process, as well as the chamber method, and do so by covering the whole scheme of temperature control. And it is therefore argued that, since the Blackmore reissue is for a generic invention and the Knietsch patent for a specific one, there can be no interference within the legal meaning of that word. But assertion is not proof, and the defendant has introduced no evidence in this cause; and, if it be shown that the method of producing sulfuric anhydrid shown in claims 6–11 of the Blackmore reissue is consistent only with the catalytic method, then it is plain that such claims interfere with those of Knietsch, which are specifically confined to that method alone. Whether this be true is largely a question of fact, and from the only expert testimony adduced (that of the complainant), and the reading of the claims themselves, I fail to see how sulfur dioxid can be conveyed in contact with an oxidizing agent (claims 6, 7), or how sulfur dioxid can be subjected to the action of an oxidizing agent (claim 8) at a temperature below the dissociating point of sulfuric anhydrid without the presence of a gaseous oxidizing agent at the point of reaction; and this is specifically not Blackmore's invention. And since free oxygen is the only gaseous oxidizing agent shown by the evidence, and sulfur dioxid and free oxygen will not unite into sulfuric anhydrid (commercially at all events), except by the contact method, it follows that the only reasonable interpretation of the quoted claims of the Blackmore reissue renders them a rather obscure description of the Knietsch discovery. I am therefore of the opinion that the patents in suit do contain claims in common and are therefore interfering patents. It appears by the printed copies of the patents and reissue introduced in evidence that Knietsch's application was filed July 14, 1898, that for Blackmore's patent February 16, 1900, and that for the reissue March 29, 1902. On the authority of Drewson v. Hartje Paper Manufacturing Co., 131 Fed. 734, 65 C. C. A. 548, I am of the opinion that the Knietsch patent covers the earlier invention.

Upon the construction of the reissue above made, it appears clear that the Blackmore reissue not only enlarged the claims of the original patent, but sought to cover and does purport to cover an entirely different alleged invention, and is therefore void. I think that the plain language of Rev. St. § 4918 [U. S. Comp. St. 1901, p. 3394), authorizes the court in an action such as this to declare "either of the patents (in suit) void in whole or in part," and does not confine the decision to invalidity for any especial reason; the only limitation of the statutory power being that the adjudication shall not "affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition" thereof. An inquiry concerning the validity or invalidity of this reissued patent can affect no one but the parties hereto, and, as to those parties, I think it clearly the duty of the court upon establishment of an interference to investigate and decide any question concerning the validity of either of the patents raised by

the pleadings in the case. Palmer Fire Co. v. Lozier, 90 Fed. 732, 33 C. C. A. 255.

There will be a decree for the complainant in accordance with the prayer of the bill.

## On Settlement of Final Decree.

Defendant's counsel desires to have a record made of the fact that at the hearing herein he did object that the date of application for the Knietsch patent was not properly proven by the introduction in evidence of a printed copy of the specification, claim, and drawings in the usual form. As this event did occur this note is made of it. It is also true that upon this objection being taken counsel for complainant produced and tendered a certified copy of said application for the examination of objecting counsel, who, however, preferred to stand upon his objection. The form of decree propounded by complainant follows that printed in Sturges v. Van Hagen, 6 Fish, Pat. Cas. 572; Fed. Cas. No. 13,570. To this form objection is made because, interference having been found to exist herein between the claims of the Knietsch patent and a part only of the claims of the Blackmore reissue, it is beyond the power of the court to do more than to adjudicate the priority of the Knietsch patent over the interfering claims of the Blackmore reissue, leaving the reissue valid for the claims not interfering; and this result is claimed to flow from Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601, as recently interpreted in Rawson v. C. W. Hunt Co., 147 Fed. 239, 77 C. C. A. 381.

The doctrine of these cases I do not think applicable here, because the Blackmore reissue not only added certain claims to the original patent, which added claims are in my opinion void as against the Knietsch patent, but it also embodied in the specification or description many statements utterly unrelated to the original Blackmore patent, obviously intended to cover the new claims here found to be interfering, and from which, if the rule of Seabury v. Am Ende, 152 U. S. 567, 14 Sup. Ct. 683, 38 L. Ed. 553, be applied, the interpreter skilled in the art could infer nothing but an attempt to cover Knietsch's prior invention. If, therefore, I am right in believing that the ascertainment of interference authorizes the court in proceeding to pronounce invalidity of the reissue in suit, I feel clear that the original Blackmore patent was not itself invalid from defective description or insufficient description, or from defective or insufficient claims. There was therefore no right at all to a reissue, and the same must be pronounced wholly void.

I do not wish, however, to compel defendant to exercise unusual haste in taking his appeal, and have therefore enlarged the period for cancellation of defendant's reissue from the 30 days asked for to "three calendar months."