**INTERNATIONAL SIGNAL CO. v. VREELAND APPARATUS CO., Inc., et al.**

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

No. 3.

**1. Patents ⬌114—Claims, to be interfering, must be substantially identical.**

As a prerequisite to declaring claims of a patent void, under Rev. St. § 4918 (Comp. St. § 9463), as interfering with claims of a prior patent, substantial identity between the claims must be found, interpreting them in the light, not only of text, but of the specifications and drawings, and of the prior art.

**2. Patents ⬌114—Suit for interference maintainable only where patents disclose invention.**

In a suit under Rev. St. § 4918 (Comp. St. § 9463), the court will not engage in useless investigation of priority, and if there is no patentable invention the bill will be dismissed.

**3. Patents ⬌114—Patentability of improvement not subject of interference suit.**

If a concededly junior patentee is claiming an alleged specific improvement on the device of the prior or basic patent, the patentability of the alleged improvement is not subject-matter for an interference suit.

**4. Patents ⬌328—Vreeland patents, 1,239,852 and 1,245,166, relating to the art of radio telegraphy, held not void, as interfering with prior Fessenden patents.**

Claims of Vreeland patents, No. 1,239,852, for receiver for electrical impulses, and No. 1,245,166, for method of transmitting and receiving high-frequency impulses, *held* not void, as interfering with claims of Fessenden patents, No. 1,050,441, for electrical signaling apparatus, and No. 1,050,728, for method of signaling, especially in view of the allowance by the patent office of the Vreeland claims after interference proceedings between the parties, in which Fessenden was awarded priority as to certain other claims.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the International Signal Company against the Vreeland Apparatus Company, Inc., and Frederick K. Vreeland. Decree for defendants, and complainant appeals. Affirmed.

Frederick W. Winter, of Pittsburg, Pa., and Drury W. Cooper, of New York City, for appellant.

---

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Dyer & Taylor, John Robert Taylor, and Philip Farnsworth, all of New York City, for appellees.

Before ROGERS, MANTON, and MACK, Circuit Judges.

MACK, Circuit Judge.   Appeal from the decree of the District Court, dismissing the bill brought by the plaintiff under section 4918 of the Revised Statutes (Comp. St. § 9463), seeking to have Vreeland patent, No. 1,239,852, granted September 11, 1917, for receiver for electrical impulses, and Vreeland patent, No. 1,245,166, granted November 6, 1917, for method of transmitting and receiving high-frequency impulses, adjudged void, as interfering with Fessenden patent, No. 1,050,441, granted January 14, 1913, for electrical signaling apparatus, and Fessenden patent, No. 1,050,728, granted January 14, 1913, for method of signaling.   Plaintiff's specific contention is that the court should annul claims 1 to 8, inclusive, of Vreeland patent, No. 1,239,852, as interfering with claims 3, 4, and 29 of Fessenden patent, No. 1,050,-441, and that, such interference having been established, the court may and should hold claims 9 to 28 of the Vreeland patent invalid, in view of the disclosure of Fessenden and the then state of the art (General Chemical Co. v. Blackmore (C. C.) 156 Fed. 968; but see Boston Pneumatic Tire Co. v. Eureka Patents Co. [C. C.] 139 Fed. 29); further, that all the claims of Vreeland patent, No. 1,245,166, should be annulled, as interfering with claims 10, 11, 12, 13, and 14 of Fessenden patent, No. 1,050,728.

The patents in question relate to the art of radio telegraphy and telephony.   All of them involve wireless systems which utilize continuous or substantially continuous waves; that is, the so-called undamped waves, as distinguished from the damped waves of the old "spark" system.   The damped waves are formed in groups or trains of relatively short duration, with long intervals of inactivity between groups, the waves or oscillations of each group being "damped"; that is, of rapidly decreasing amplitude or strength.   An undamped wave is persistently generated and is of constant amplitude.   All of the patents make use of the "heterodyne" principle, involving the production of signals by means of harmonic beats, analogous to musical beats.   These are produced by the co-operation of the currents of the received electrical pulses and the locally produced forces.   The heterodyne principle makes it possible to overcome many atmospheric disturbances, and to select the signals from a given station to the substantial exclusion of signals from other stations.   The beats produced are measured by the difference between the frequency of the received wave and of the locally generated oscillations.   The receiver controls the pitch of the signal note by controlling the frequency of the oscillations.   The utilization of the continuous undamped waves and the beats principle marked a very great advance in the art.   Kintner et al. v. Atlantic Communication Co. (D. C.) 249 Fed. 73.

[1] The Fessenden inventions, covered by the patents in suit, are admittedly prior in time.   His claims, alleged to be interfered with, are broad in scope; if valid (and validity is not here contested), the utilization of Vreeland's patent concededly would involve infringement

thereof. But the question raised by this bill is that of interference under R. S. § 4918, not that of infringement; that is, it is not whether the plaintiff could enjoin the use of the method and product of the Vreeland patents, but whether there is substantial identity of scope, though not necessarily literal identity of language, in certain claims of the Fessenden and Vreeland patents. While, to ascertain the invention covered by a claim, the claim is to be interpreted in the light, not only of text, but of the specifications and drawings, and of the prior art, substantial identity in whole or in part in the invention so claimed must be found as a prerequisite to interference. Stonemetz Co. v. Brown Co. (C. C.) 57 Fed. 601; Nathan v. Craig (C. C.) 49 Fed. 370; Simplex Ry. Appliance Co. v. Wands, 115 Fed. 517, 53 C. C. A. 171.

[2] Two patents should not be issued for the same invention; if the Patent Examiner believes that such identity exists, either between two pending applications or between a pending application and a patent, verbally identical claims are suggested, and an interference declared by the Patent Office to determine priority of invention. If, however, two such patents have issued, the court, not the Patent Office, is the forum; proceedings under section 4918 may be brought. The aim, however, is unchanged; to determine priority of invention, and, on the basis thereof, to annul the patent erroneously and/or inadvertently issued. The court will not, however, engage in a useless investigation of priority; if there is no patentable invention, the bill will be dismissed. Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 733, 33 C. C. A. 255; Simplex Ry. Appliance Co. v. Wands, supra.

In a limited sense, so far as establishing inter partes the question of priority of invention, interference proceedings partake of the nature of the so-called declaratory judgments, a subject-matter of very recent legislation. See Borchard, The Uniform Act on Declaratory Judgments, 34 Harvard L. R. 697. Clearly, however, section 4918 does not provide for a declaratory decree to establish even inter partes the validity or scope of the claims either of a basic patent or of a concededly junior improvement patent; actual or threatened infringement is essential for a suit to settle these questions.

[3] If, then, the concededly junior patentee is claiming an alleged specific improvement of the prior and basic patent, the patentability of the alleged improvement is not the subject-matter of an interference suit. Stonemetz Co. v. Brown Co., supra; Boston Pneumatic Power Co. v. Eureka Patents Co., supra.

[4] Applications for the patents here in controversy were pending in the Patent Office at the same time. Five of Vreeland's claims in his transmitter application were suggested to and accepted by Fessenden, and, in the contested interference that was declared by the Patent Office, Fessenden's right thereto was sustained. It is quite possible, as the file wrappers appear to indicate, that other claims in the Vreeland patents, as originally framed in ignorance of Fessenden's prior application, either covered the same invention or presented no patentable advance thereover. The Examiners endeavored to allow only those claims which, in their judgment, indicate some step forward in the art. Vreeland thought that the full scope of his invention was not recognized, and pressed, but without success, an appeal on some of his claims.

While the courts are not bound by the decision of the Patent Office as to the validity of those claims which were finally allowed, the considered decision of the Patent Office is entitled to great weight, and, in view of the careful examination of Vreeland's claims by the Patent Office, and its conscious endeavor to eliminate those in interference with or not patentable over Fessenden, only the clearest conviction of identity of claims would justify the court now to find an interference. The Patent Office would not have allowed the claims in question, in the light of its own comparison with the Fessenden claims, unless it considered that they not only asserted, but actually embodied, a patentable advance over Fessenden's claimed inventions. As Chief Justice Taft says in Hildreth v. Mastoras (U. S. Supreme Court, November 7, 1921), 257 U. S. ——, 42 Sup. Ct. 20, 66 L. Ed. ——:

"The presumption of priority and novelty [and, we may add here, noninterference] which arises from the granting of a patent must have greatly increased weight, and the claim of the inventor is subjected to such close and careful scrutiny under the stimulus of a heated contest."

Whether or not the asserted improvement embodies a patentable advance may be contested and determined in an infringement suit; indeed, defendant has sued plaintiff for an alleged infringement of these very claims. This court, however, would not be justified on this record in holding that Vreeland clearly did not even assert a patentable improvement over Fessenden. Let us consider the receiver or apparatus patents (Fessenden patent, No. 1,050,441, and Vreeland patent, No. 1,-239,852) first:

Claim 3 of Fessenden may be compared with claim 1 of Vreeland as typical of the interference claimed. Fessenden's claim 3 reads:

"A signal system having in combination at a receiving station, a receiver and a constantly operating frequency determining element having a frequency differing from that of the received impulses to such an extent as to cause beats to be formed at the station on the receipt of transmitted pulses."

Vreeland's claim 1 states:

"A receiver of sustained high-frequency signal impulses, wherein are combined a detector, a local source of sustained alternating currents of slightly different frequency from the signal impulses, and means for combining the local currents with the signal impulses, and applying the resultant beat current to the detector, substantially as set forth."

Vreeland's contention is that, while his claim may infringe Fessenden's patent, it goes beyond it and makes a substantial contribution to the art, in suggesting, not merely the mechanical interaction of the received and locally generated current to produce beats, but the combination of the two currents to form a resultant beat current, which is applied as a unit to the detector. Although the use of such a resultant beat current may fall foul of Fessenden's generic claims in an infringement suit, such a resultant beat current cannot be said to be so described or referred to in Fessenden's claim as to involve Vreeland's claims in interference.

Vreeland contends that there is no inkling in Fessenden's patent of the combining of the received current and locally generated current in a common circuit, so as to produce a new resultant beat current. He

points out that Fessenden uses a dynamometer telephone with two separate coils. Plaintiff contends, however, that by induction the currents in the two separate coils of Fessenden's dynamometer telephone combine in a common circuit and produce a resultant current. Vreeland denies that such a resultant current is a regular or necessary incident of Fessenden's patent, and states that any such current developed would be inefficient and not dependable and consequently could not be regarded as an anticipation of the resultant current described in his patent; and, of course, if necessary to sustain their validity, Vreeland's claims may be limited by the descriptions contained in his specifications.

But plaintiff proceeds to point out that Fessenden specifies that his patent may be operated by an interaction of either electrostatic or magnetic fields, and that the reference to electrostatic fields would inevitably suggest to any one versed in the art the use of a condenser telephone, which is one of the favored devices of Vreeland for uniting the received and local currents in a common circuit to produce a new beat current. Vreeland, however, takes the position that the use of the condenser telephone in this connection marked a distinct advance in the art over the preferred contrivances described by Fessenden, and that the means of utilizing the condenser telephone was not pointed out, or even understood, by Fessenden, who apparently deemed it desirable that the received and local currents be left in separate circuits. Vreeland contends that this reference to electrostatic fields has no clear or definite content, and that it may have referred to a quadrant electrometer, a laboratory instrument used for measuring potential or electrical charges.

These considerations evidence that there is at least a substantial controversy between the parties as to whether the invention which Vreeland asserts he has made is a patentable advance over Fessenden's disclosure. This may and should be determined in an infringement suit; but in view of the difference in the claims and the considered action of the Patent Office in respect thereto, an interference suit will not be allowed.

As to the transmitter or method patents, Vreeland maintains that his claims 1, 2, and 3 are distinguishable from and patentable over Fessenden, by reason of their describing as the very essence of the invention, the combination of the current oscillations in the receiver "in a common element in a tuned circuit." The issues thus raised are substantially the same as those discussed in connection with the receiver patents, and are not, in our judgment, appropriate for decision in an interference suit, under section 4918.

The interference issue raised, as between Vreeland's transmitter claims 4 to 10 and Fessenden's transmitter claims 10, 11, 12, 13, and 14, is somewhat different. It may be illustrated by a comparison of Fessenden's claim 11 with Vreeland's claim 8. Fessenden's claim 11 reads:

"The method of transmitting and receiving sustained alternating signal impulses, which consists in transmitting a continuous wave train of sustained oscillations, changing the frequency of such continuous wave train to produce signals, combining with such transmitted wave train at the receiver locally generated sustained oscillations and observing the combined effects of such oscillations."

Vreeland's claim 8 is word for word the same as Fessenden's claim 11 above cited, except for the addition of the word "abruptly" before the clause "changing the frequency of such continuous wave train." The identity of language, but for this one word, is due to the fact that it was Vreeland's language; Vreeland, not Fessenden, was its author; Fessenden adopted it at the suggestion of the Patent Office on the interference issue, in which he was successful. With this record before it, the Patent Office subsequently allowed Vreeland's claim with the addition noted, evidently for the reason that it considered the amended claim, read in light of Vreeland's specifications, not only substantially different from, but a patentable advance over, Fessenden. Both patents involve the variation in pitch of the beat notes through a slight change in the frequency of the signal pulses. But Vreeland claims his invention in the abruptness with which he is able to effect this change by varying the electric constants of the system, and through which he contends increased clarity of audition and sharpness in beat note changes are achieved.

The abrupt character of the frequency changes is not specifically claimed by Fessenden. Plaintiff contends that Fessenden makes his changes abrupt enough for practical purposes, but that would not in itself necessarily invalidate a patent intended to secure abrupt note changes, with increased effectiveness. Plaintiff further maintains that Fessenden did not restrict himself to effective frequency changes, by varying the speed of the mechanical alternator shown in his drawings, but expressly referred to the use of a mercury lamp, and to his patent, No. 706,742, both of which, it contends, should suggest to one versed in the art the variation of wave frequency by a change in the constants of the circuit. Vreeland denies the sufficiency of these references; he points out that patent No. 706,742 relates to "spark signals," and he maintains that it is in no event the simple equivalent of his contrivance. But the issues raised by these conflicting contentions go, not to the question of interference, but to that of patentable advance; that is, whether or not Vreeland is anticipated by the disclosures of Fessenden and by the prior art.

The trial judge was experienced in the trial of patent cases in this specific art; he heard the entire testimony, and took an active part in the examination of the witnesses; he has stated in his opinion that he was strongly impressed by Vreeland's testimony. These circumstances and the Patent Office proceedings fortify us in our own conclusions that the decree must be affirmed.

MANTON, Circuit Judge (dissenting). This is an appeal from a decree for the appellees, dismissing a bill asking for equitable relief under section 4918. The appellant seeks to have the Vreeland patents, No. 1,239,852, granted September 11, 1917, for a receiver for electrical impulses, and No. 1,245,166, granted November 6, 1917, for method of transmitting and receiving high-frequency impulses as interfering under this statute with appellant's Fessenden patent, No. 1,050,441, granted January 14, 1913, for electrical signaling apparatus, and patent No. 1,050,728, granted January 14, 1913, for method of signaling. It is sought by this action to annul claims 1 to 8, inclusive, of the Vreeland

patent, No. 1,239,852, as interfering with claims 2, 3, 4, and 29 of the Fessenden patent, No. 1,050,441; also, the suit seeks to establish that claims 9 to 28 of the Vreeland patent are invalid, for the reason that they are disclosed in the Fessenden patent and the then state of the art. The appellant also seeks to have decreed that all of the claims of Vreeland's patent, No. 1,245,166, are interfering with claims 10, 11, 12, 13, and 14 of the Fessenden patent, No. 1,050,728. The patents in suit all involve wireless systems in the art of telephony and telegraphy.

Under section 4918 of the Revised Statutes[1] the appellant may maintain, as a person interested, this action against the owner (as the defendant is) in equity for the interference with the appellant's patent by reason of the grant of the Vreeland patents to Vreeland. The court has the power to adjudge and declare either of the patents void in whole or in part, or inoperative or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. General Chemical Co. v. Blackmore (C. C.) 156 Fed. 968. Therefore, if the patents interfere or cover the same invention, this action is maintainable. It is therefore essential, as in infringement suits, that interpretation or construction of the patents be considered in determining whether there is such interference. It is necessary to examine the disclosure of the patents themselves, and to ascertain what was the state of the art at the time of the prior grant. Thus, one of the patents involved may have but a single claim that interferes; all other claims may be different in terms or degree. Under such circumstances, the court has power to declare such claim void because of the interference with the rival patentee. Bird v. Elaborated Roofing Co., 256 Fed. 366, 167 C. C. A. 536.

When a patent is granted by the Patent Office, the grant must have protection against interference, for in a single invention there can be but a single patent. Under this statute, the court's decision only affects the actual interest before the court, and does not prejudice any stranger to the litigation owning an interest in either patent. The rule of construction in a proceeding of this kind forbids the outstanding of two grants of patents for the same invention. Such a situation is created where the same inventive thought is described in two patents in quite different language. It was this view which has led to a great number of decisions which find infringement or lack of infringement, irrespective of the presence or absence of the literal response to the language of the claim. Benjamin El. Co. v. Northwestern Co., 251 Fed. 291,

[1] "Sec. 4918. Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment."

163 C. C. A. 444; Geoghegan v. Ernst, 256 Fed. 671, 168 C. C. A. 64; Tostevin-Cottie Mfg. Co. v. Ettinger, 254 Fed. 435, 166 C. C. A. 66; Silver Co. v. Sternau & Co., 258 Fed. 448, 169 C. C. A. 464.

The inquiry in the case at bar is: Did the inventors make the same contribution to the sum of human knowledge as was said in Bird v. Elaborated Roofing Co., supra? If so, the claims are for the same invention, notwithstanding the lack of similarity in language or scope or number of elements. In this study, the authorities clearly establish that the court is not limited to consideration of claims alone, but "the invention * * * covered by the claims is to be ascertained * * * by a proper construction thereof" giving to each claim its due scope and effect. Simplex Ry. Appliance Co. v. Wands, 115 Fed. 517, 53 C. C. A. 171. To determine the particular discovery for which each of the patents was granted and the point from which the inventor started, in order to know what the invention is that supports the patent, the courts have even taken recourse to expert testimony as to the technical terms and the difference between or the identity of the devices. Palmer v. Lozier, 90 Fed. 732, 33 C. C. A. 255. It has also examined the knowledge of the art and the position of the patents in that art. It may even apply the doctrine of equivalents, in order to determine what is a patentable invention covered or attempted to be covered by each of the patents. If there is no claim to the same invention made as to one of the patents, there is no interference; but, when each patent has a claim directed to that invention, there is an interference, even though the claims of the rival patents are not identical in terms and the number of elements, or in scope.

An issue of fact is thus presented upon all the evidence, whether they are of the same effective scope, and this issue cannot be determined upon the face of the two documents, but both are to be construed in the same way and upon like evidence as a patent in an infringement suit or in a suit to recover royalties under a license agreement. Logically, this is necessary in order to determine whether the two patents granted cover a single invention. If so, that which is granted later must give way to the earlier grant. If, under the evidence here disclosed, the system and methods disclosed by the Fessenden and Vreeland patents, as they are understood by the skilled worker in the art, and in view of the then state of the art, are the same essentially and electrically, there is only one invention, no matter how the claims may be phrased. If such a conclusion is reached, this court is empowered, under the terms of the statute, to go so far as to find the Vreeland patents void in whole or in part. It is true that, when two patents are pending in the Patent Office at the same time, and both of them granted there is a prima facie presumption that each was properly granted. Boyd v. Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973. Nevertheless, if both patents are for the same things as far as any inventive qualities are concerned, only one of them can stand. Brooks v. Sacks, 81 Fed. 403, 26 C. C. A. 456. The claim of the appellant is that the patents of Fessenden and Vreeland do exactly the same thing and in the same way.

The receiver patents are for continuous, or substantially continuous, waves; such waves are manifested in the indicator by combining the re-

ceived wave with the electrically produced oscillations of slightly different frequency. These produced beats are equal to the difference between the frequency of the received wave and the locally generated oscillations. The receiver controls the pitch of the signal note by controlling the frequency of the oscillations. They amplify the signal strength. Thus, both have the ability to select the signals from a given station to the substantial exclusion of signals from other stations. As I examined the claim of the appellees, it is that the Fessenden patent illustrates one kind of an indicator, in which the beat signal is made manifest, while the appellees illustrate indicators which are manifestly different. The transmitter patents utilize the continuous wave with the beats receiver or heterodyne. The transmission of the signals is effected by changing the frequency of the transmitted continuous wave, thereby producing in the heterodyne receiver a different beat note between the parts of the wave indicating the signals and the parts indicating the interval between signals. As one, for the signal parts, the transmitted wave can be of the frequency differing from the frequency of the electrically generated oscillations which are combined together, thus giving in the receiving telephone, the beat note of a pitch to say 1,000 vibrations per second, and whereas for the periods between the signals, the transmitted wave can be made to substantially co-exist in frequency with that of the electrically generated waves or oscillations, thus producing no beats giving periods of oscillations of the telephone, or made of such frequency as to give a different pitch note from that of the signal.

As to the claims, the appellees say that Fessenden's are generic in character, and are based upon a structure involving the keeping of the current separate; that the Vreeland claims are specific in character, and are based on a structure involving bringing the two currents together— that is, combining the two currents in one circuit. It contends that Fessenden used for his receiving apparatus a device known as a dynamometer telephone with two separate coils. With an ordinary telephone receiver, or so-called magnetic telephone, an electromagnet having a single coil transversed by telephone currents is located in close proximity to a diaphragm, which vibrates in accordance with the varying magnetic effect. It is claimed that with the dynamometer telephone there is no combined current, but two flat coils, known as "pancake" coils, each in a separate circuit, one of said coils being mounted on a telephone diaphragm and the other stationary, whereby variations in the magnetic pull between the two coils will take place when they are traversed by the telephone currents.

It is argued that Fessenden never conceived of Vreeland's invention of combining the two currents in one circuit, and that therefore he used this type which is an inefficient separate coil dynamometer. It is contended that the signal and local currents are separate, transversing separate circuits, and that they separately transverse the separate coils which produce mechanical action. Appellee's claim is that Fessenden's patent is known as a mechanical heterodyne. The appellant claims that there is an induction and therefore there is no separation of currents; but there is the interaction of currents, and but one circuit. It is the

matter of control of current or the circuit that counts. It may be that Vreeland, by the receiver which he has used, has accomplished the result of an improved indicator of the current; but this does not make his invention different, if there is in appellant's an interaction of currents and but one circuit.

Fessenden, in his patent, says that it may operate by interaction of either electrostatic or electromagnetic fields, and that a variety of forms of receiving devices may be employed saying that those which he illustrates are convenient and desirable. The indicator illustrated is old in the art, operating with an electrical magnetic field. It is called a dynamometer telephone, but it is apparent that an induction of one current to the other takes place at the two coils marked *8* and *10* in Fig. 3. Vreeland admits that, even with the arrangement shown in Fig. 5 of his receiver patent, either the received signal impulse or locally generated oscillations alone would produce an electrostatic field between the plates of the condenser telephone. Claims 26, 27, and 28 of this receiver patent include the electrostatic field excited by local oscillations and another field of different frequency excited by signal impulse. It thus appears that, where the local voltage is produced, the static telephone has two existing interacting fields whose resultant moves the diaphragm.

Is there any essential difference between the static and the dynamometer telephone, as far as the fields are concerned? In either case, the heterodyne, the currents of different frequency, are applied to the instrument, and there is a resultant field in the telephone, due to the interaction or superposition of the effects of the energies supplied by the two currents. The substitution, therefore, of the static telephone for the dynamometer telephone, is not a difficult, but a simple, matter to one skilled in the art. Vreeland admits that there is no distinction between the fields and currents or between superposition or combination of currents and the interaction of fields. This is illustrated in Figs. 5, 9, and 10 of the Vreeland original drawings and in his original specifications. The same contention that is advanced here by the appellee, that the Fessenden claims are for a generic invention, while Vreeland's are for a specific invention, was presented in General Chemical Co. v. Blackmore (C. C.) 156 Fed. 968, and an interference was held to exist, because the only reasonable interpretation of Blackmore's alleged generic claims rendered them an obscure description of the specific discovery. In the case at bar, a combined or beat current necessarily exists in the Fessenden circuits, and since the indicator or detector is operated by that beat current, a proper interpretation of Fessenden's claims becomes a clearer description of Vreeland's alleged specific invention. It is thus apparent that the patents in suit (Fessenden's, No. 1,050,441, and Vreeland's, No. 1,239,852) contain claims in common and are interfering patents. The substance or invention is one and identical; the only difference is in the manner of its statement.

The transmitter patents (Fessenden, No. 1,050,728, and Vreeland, No. 1,242,166) involve the use of the continuous wave transmission with the beats reception or heterodyne; the essential novelty consisting in transmitting the signals by changing the frequency of the continuous

wave whereby there is produced in the heterodyne receiver a different beat effected by the waves constituting the signal characters than by those constituting the intervals between signal characters. The systems of the Fessenden and Vreeland patents do exactly the same thing. Both make use of a continuous wave; both produce the signal characters by changing the frequency of the wave; and both receive with a beats receiver. The analogy is so close between these patents that the sole difference between certain of the rival claims is that Vreeland claims say the change of frequency of the transmitted wave is made abruptly; whereas in the Fessenden claim the word "abruptly" is not used. So far as the physical things are concerned, this attempted definition has to do merely with a particular kind of generator used for producing the transmitted wave. Fessenden illustrates a transmitting generator, a high frequency alternator, a form which he had previously patented, and to which he would by nature be partial. Vreeland illustrates a vacuum tube, an alternator of the form which he had previously patented, and to which he was naturally partial. Both types of generators were old in the art and were used for producing continuous waves.

To sustain the appellees' position, it is necessary to limit the Fessenden disclosure of a transmitting generator to a high-frequency alternator illustrated, and then so that change of frequency can be effected only by varying the speed of the roto of that alternator, and that this cannot be done abruptly. But in practice, with the use of the appellant's generator, the change of frequency is effected with sufficient rapidity to transmit, and there is sufficient "abruptness" to accomplish the purpose of the invention. Fessenden does not limit, by his illustration, a particular form of generator, but mentions other forms of generators.

Does the change of wave frequency by the alternator illustrated by Fessenden become "abrupt"? And then does Fessenden disclose a sending generator of a type the frequency of whose generated waves can be changed in precisely the way disclosed by Vreeland, and therefore equally as abrupt as with the Vreeland generator? Vreeland cannot confine Fessenden to the use of the high-frequency alternator illustrated. The method in issue contemplates only a slight change of frequency; Fessenden saying a matter of one-fifth of 1 per cent., while Vreeland a minute variation during the frequency of these (transmitted) waves. Fessenden in no way limited himself to the use of the high-frequency alternator, and changing its speed by means of rheostat or the like. He disclosed, among a number of transmitting generators to be used, one of exactly the same kind as illustrated by Vreeland. He says in his patent:

"In the practice of my invention I prefer the use for sending and means for producing continued radiation, which may be, for example, the high-frequency generator having the characteristics described in patent No. 707,737, or the means described in patent No. 706,742."

And again:

"It is preferred to use a high-frequency alternator, or any other suitable device for producing unintermittent oscillations, as, for example, a device

operating by direct current, with or without discharge gap, as described in letters patent No. 706,742."

In patent No. 1,050,441 he says:

"I prefer to use a high-frequency alternator, or a mercury lamp producing oscillations whose frequency is maintained constant—that is to say, not intermittent—by automatic means."

It is apparent to me that the specific transmitting generator used by Fessenden, to wit, the high-frequency alternator, with a slight change of speed necessary to produce the necessary change in the signal note, can be made with sufficient rapidity to transmit signals nearly as fast as they can be recorded and received by the aural receiver, and that, therefore, the change of frequency of the transmitted waves is made abruptly. Speaking from the result accomplished by each as disclosed by the record, I do not think that there is much more than a change of phraseology in the specifications and claims used by Vreeland. Fessenden was the first in date of application and of grant as to the receiver and transmitter patents, and protection should be accorded to him.

I think that claims 1 to 8, inclusive, of Vreeland patent, No. 1,239,-852, interfere with claims 3, 4, and 29 of Fessenden's patent No. 1,050,-441, which was granted first, and that the Vreeland patent, No. 1,245,-166, are interfering claims with claims 10, 11, 12, 13, and 14 of Fessenden patent, No. 1,050,728. The subject-matter is technically the same. The invention discloses the same idea. Similarities and differences do not depend on mere names or words used to describe them, or immaterial matters by which they may be distinguished. Glue Co. v. Upton, 97 U. S. 3, 24 L. Ed. 985. In determining similarities and differences, the courts are not governed by the names of things, but they must look to the devices and contrivances in the light of what they really are and what office or function they perform and how they perform it.

For these reasons, I think the decree below should be reversed.