## WESTINGHOUSE ELECTRIC & MFG. CO. et al. v. PRECISE MFG. CORPORATION.

### SAME v. CHAS. A. BRANSTON, Inc.

(District Court, W. D. New York. August 6, 1925.)

1. Patents ⟜259—Sellers of radio parts, adapted and intended for use in particular manner, held guilty of contributory infringement.

Sellers of radio parts of special kind, adapted for and intended for use in obtaining intermediate frequency amplification and regenerative loop for feed back to grid circuit, held guilty of contributory infringement of Fessenden patents, Nos. ―――― and ――――, and Armstrong patent, No. ――――.

2. Patents ⟜327—Patent decision of Circuit Court of Appeals in particular circuit binding on District Courts of that circuit.

Decision of Circuit Court of Appeals on validity of patent is binding on District Courts of that circuit, regardless of conflicting decisions in another circuit.

In Equity. Patent infringement suits by the Westinghouse Electric & Manufacturing Company and the Radio Corporation of America against the Precise Manufacturing Corporation and against Charles A. Branston, Inc. Injunctions pendente lite granted.

Judgment affirmed 10 F.(2d) ――.

---

[1] New Jersey v. Sargent (Jan. 4, 1926) 46 S. Ct. 122, 70 L. Ed. ――.

Charles Neave and Stephen H. Philbin, both of New York City, for plaintiffs.

Darby & Darby, of New York City (Samuel Darby, Jr., of New York City, and John S. Powers, of Buffalo, N. Y., of counsel), for defendants.

HAZEL, District Judge. It is unnecessary to discuss the technical aspects of these cases at length, as it appears that both the Fessenden patents in issue for heterodyne apparatus and method inventions have at various times been sustained in this circuit and accorded a broad scope of equivalents (Kintner v. Atlantic Com. Co. [D. C.] 241 F. 956; International Signal Co. v. Vreeland Apparatus Co. [C. C. A.] 278 F. 468); and so also the Armstrong patent in suit for regenerative invention (Armstrong & Westinghouse Co., etc., v. De Forest [D. C.] 279 F. 445 (affirmed [C. C. A.] 280 F. 584). These decisions were followed and applied in a number of adjudications in the Southern district of New York, on applications for preliminary injunctions in other suits, and the application in each instance was allowed by different District Court judges; they substantially holding that the sale of unassembled parts, separately or collectively, to accomplish the objects of said patents, constituted acts of contributory infringement, and, moreover, that it makes no difference that the buyer or user put the various parts together to obtain the heterodyne or superheterodyne effect. Judge Learned Hand so ruled in Westinghouse, etc., v. Independent Co. (D. C.) 300 F. 748, and afterwards in Westinghouse, etc., v. Taub (D. C.) 4 F.(2d) 605, Judge Knox substantially ruled that the use of instrumentalities by which the method of heterodyning, or so-called beat frequency (as distinguished from ordinary receiving circuits) is obtained for circuit detection or amplification, so as to utilize the telephone receivers in transmission of sound waves, constituted infringement by the defendant, in the case before him, of the Fessenden and Armstrong patents, and he enjoined the sale of parts ready for assemblage, though admittedly such parts were old in the art, to be used to constitute a superheterodyne radio receiving set of the type described in the patents in suit. In Westinghouse, etc., v. Experimenter's Bureau, Inc. (no written opinion), Judge Goddard also enjoined the defendant from selling superheterodyne radio receiving sets or kits of parts, particularly oscillator coils and radio frequency transformers and tune couplers, which, he said, were infringements or

contributory infringements of the patents in suit. In all of the decisions granting preliminary injunctions the court followed the decision of the Circuit Court of Appeals of this circuit, and such an array of authority on a question similar to that presented in this case is entitled to persuasive weight, without a critical examination that would be given if such authority did not exist.

In the case at bar defendants do not question the validity of the Fessenden patents in suit, and the single question in the Precise Manufacturing Corporation Case is whether the sale by it of transformers infringes the patents, including the Armstrong patent. The argument proceeds upon the theory that, since plaintiff simply urges contributory infringement, ultimate infringement must first be proven before a preliminary injunction can issue. Concededly various elements of the claims in issue of the Fessenden and Armstrong patents are not new. No new instrumentalities are included in them, but the assemblage of the parts was new and constituted a new and novel combination, which gave results not theretofore known. Accordingly, if the transformer sold by defendant, though an old instrumentality, is capable of use in the patents in suit, and if it and the filtoformer, with other parts, attained in use substantially the same result as the plaintiffs' apparatus, there is no doubt that defendants are liable as contributory infringers; in fact, in such case the defendants have contributed to the ultimate infringement.

It is clear in my mind that the various parts—oscillator couplers, intermediate frequency transformers, and transfer and filter couplers—are essential elements of the heterodyne invention. These instrumentalities make superheterodyne receivers possible, as distinguished from prior receivers used in radio sets. These parts are not standard parts, but were new, in the sense that they were assembled and correlated in a way to accomplish a marked step in advance of what had already been accomplished in this art. Superheterodyning with intermediate frequency amplification was for the first time introduced to the art by the patentees, and intermediate frequency transformers were necessary to obtain the desired wave frequence. The record shows that the Precise transformers are tuned and matched for predetermined intermediate frequency in its circuit. It is not enough to say that its transformers are usable in other ways without a specific showing in relation thereto, namely, that they were sold for other uses.

[1] But that the Precise Company manufactures and sells transformers for superheterodyne radio sets is fully shown by their advertisements, in addition to the exhibit sold to plaintiff's representative, which prima facie, at all events, shows the use to which such instrumentality is put. Nor is there any doubt but that the transformer or multiformer and filtoformer or oscillators, etc., are manufactured and sold by it with the intent that they are to be used by the purchaser in circuits in such a way as to attain the result of the heterodyne and regenerative inventions, or in what is known as superheterodyne.

The defendant Branston, Inc., also markets and sells superheterodyne parts contained in kits usable in the oscillatory system and the intermediate frequency system of a superheterodyne receiver. The exhibits in evidence consist of sets of intermediate frequency transformers of various types, together with oscillator couplers, transformers, and special transfer couplers which admittedly are essential features of the Fessenden inventions. It also deals in generator loops with suitable terminals for conjoint use with transformers which are capable of operation in regenerative assembly of radio parts. It makes no difference that the loops are used in prior radio sets, if the loop is connected up so that frequency force is regenerated or fed back from the plate circuit to the grid circuit of the first tube. The diagrams in evidence and the printed matter on the boxes indicate an intended use for superheterodyne purposes.

[2] The objection to the bill, because of multifariousness, is untenable. Although the validity of the Armstrong patent is questioned by defendant, the decision of the Circuit Court of Appeals for this circuit holding the patents valid is controlling here, and it is the duty of this court to follow such decision, regardless of a conflicting decision in another circuit.

Both defendants, in my opinion, may be held liable for contributory infringement, in that they have made and sold radio parts of a special kind, namely, matched transformers, filtoformers and other parts for obtaining intermediate frequency amplification, and by Branston, Inc., of the regenerative loop for backfeeding of the waves, and which are connected in the circuit to accomplish the result of the Armstrong patent.

An injunction pendente lite is granted, upon condition, however, that a bond of indemnity be given defendants for any damages they may sustain, if the injunction

should be vacated or set aside on appeal. The amount of the bond may be fixed by the parties.