BRADLEY v. ECCLES et al.

(Circuit Court of Appeals, Second Circuit. May 21, 1905.)

No. 234.

PATENTS—INFRINGEMENT—PACKING FOR THILL COUPLINGS.

The Bradley patent, No. 609,928, for a combination in a thill coupling, with a draft eye having spherical recesses in its jaws, and a draft iron having a spherical knuckle of an interposed spherical packing, which constitutes the only novel element, is a narrow one, in view of the prior art, and must be limited to the precise form of packing shown, which is a single piece of hard leather, molded before application into such shape as will cover the knuckle completely, but with an open longitudinal joint, which permits it to be sprung open so as to slip over the knuckle, whereupon it resumes its spherical shape. It is not infringed by the use in such a coupling of flat pieces of leather, notched on the edges so that when the jaws are closed they are pressed around the knuckle, into a spherical shape.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This cause comes here upon appeal from an order of the Circuit Court, Northern District of New York, granting an injunction against the sale of "any piece of leather together with the other parts of the thill coupling of patent No. 609,928, to the same vendor or user, either jointly or separately." The patent in question was discussed by this court in a former suit between the parties. It was held valid, and the type of washer then complained of (a Chinese copy of that shown in the patent) was held to be an infringement. Bradley v. Eccles, 126 Fed. 945, 61 C. C. A. 669. Reference may be had to this prior opinion for a full description of the patent and of the prior art.

See 133 Fed. 308.

W. A. Megrath, for appellants.

Howard P. Denison, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The alleged infringement now complained of is the sale, with the couplings, of flat pieces of leather

having notches centrally upon their lateral edges, so that, when the purchaser desires to use them, he places them between the jaws of the coupling, adjusts them, bends them over so as to cover the spherical knuckle, and then places the knuckle in place, and clamps the movable jaw down onto the fixed jaw, with the packing between. Thereupon, if adjustment be properly made, the packing assumes the exact form shown in Fig. 3 of the patent. Under the construction given to the patent when it was here before, these flat pieces of leather cannot be held to infringe. We then held that the patentee must be confined to the precise form of packing set forth in the patent, saying:

"That is, a hard leather packing, molded before application into such shape as will cover the knuckle completely, integral, but with an open longitudinal joint [slit] which permits it to be sprung open so as to slip over the knuckle, whereupon it resumes its spherical shape. * * * The patent must be confined closely to the precise device of the claim. * * * The specification states that 'the packing may be composed of separate halves,' but no such form is included in the claim, nor would the prior art allow the patentee to so include it."

The complainant in this suit realizes that the charge of infringement cannot be sustained unless our prior opinion is in some respects modified. His brief contains this statement:

"When this case was before the Court of Appeals the patent was sustained, but the claim was erroneously and unjustly limited by the opinion to a spherical packing, integral, molded before application; and complainant therefore requests the court at this time to take cognizance of this fact, and correct the limitations imposed by that opinion."

In support of this contention it is suggested that there is nothing whatever in the claim which says that the device must be integral, or that it may not be made of two separate halves, or that it must be molded into a spherical form before application. This suggestion is correct—there is no such restricting language in the claim—and the phrase used in our former opinion, "The patent must be confined * * * to the precise device of the claim," would have been more accurately expressed, had it used the words "precise device shown." But it is manifest from the opinion that the claim was limited, not because of its language, but because the prior art left no room for invention unless it was restricted in the manner indicated. The opinion expressly stated that, although the specification stated that the packing might be composed of separate halves, such modification could not be sustained, in view of the Murray Canadian patent, showing a thill iron with ball coupling between inverted cup-shaped packings. In his brief now filed, complainant asserts that the Murray Canadian patent shows two flat disks. That patent is not printed with the papers on this appeal, but the excerpts from it, which were laid before this court on the former appeal, contained the following:

"Between the ball, d', and * * * I locate the inverted, cup-shaped packing, f, preferably made of leather or rawhide, or similar elastic material. * * * In the bottom of the semispherical recess, a4, * * * is laid a cup-shaped packing, f', similar to the one marked f."

With a device of the prior art so close to the one patented, we were satisfied that the claim could not be sustained unless it were restricted in the manner indicated, and we are still of the same opinion.

In like manner, it was the showing made of the prior art which induced this court to restrict the claim to spherical packing molded before application. It must be remembered that some six years prior to the patent in suit the same patentee had taken out one for a thill coupling, the iron parts of which, including the spherical knuckle on the thill, fitting into a similarly shaped recess in the draft eye, are substantially the same as in the patent in suit. We were satisfied that there could be no invention merely in applying a washer between these metal parts, and quoted from the opinion of the judge who heard the cause at circuit:

"Pieces of rawhide, cloth, or leather of any description, placed in the spherical recesses beneath the wrist or knuckle of the thill or pole, and also above before the draft eye is closed and fastened, will form a sort of substitute for the packing described. So pieces of flat leather so placed, the one piece above and the other piece below, if cut of the right size and thickness, will constitute an inferior substitute."

The brief now filed by complainant contends that "there was nothing in the record of that case which gave Judge Ray any authority for making that kind of a statement." To a certain extent, this contention is correct. No witness testified to any particular experiment with flat pieces of leather (the patentee stated generally that he had been unsuccessful with washers until he devised his present improvement), and therefore there was no evidence in the record before Judge Ray to show that such washers would be inferior substitutes; but such washers, whether efficient or inefficient, were nevertheless a part of the prior art, with which the device of the patent was to be compared in order to see if it exhibited patentable invention. There are some elementary details of everyday domestic mechanics of which a court will take judicial notice. No sworn testimony is needed to inform it that the use of leather washers to relieve friction, prevent rattling, secure even pressure, and avoid wear and tear between metal surfaces, has been the common property not only of mechanics, but of all persons possessing ordinary intelligence, for many generations. If the bearing surfaces are square or circular or triangular—cylindrical, conical, or spherical—ordinary common sense would suggest that the scrap of leather to be employed must be of such shape and size as reasonably to conform thereto. If the surfaces are close together, the leather must be thin. If far apart, it should be thicker. This knowledge was the common property of every one who, with the ironwork of the first Bradley patent before him, might undertake to relieve the rattling of its parts; and, if all the patentee had done was to put a flat leather washer of suitable size and shape between those parts, this court would not have found invention in such a contrivance, even though, after it was forced into place by the closing of the draft eye upon the spherical knuckle, the leather assumed the shape shown in the patent. The patentee, however,

went a step further. He testified that "after repeated experiments [he] devised a way for pressing up a leather packing into the form shown in the drawings," "provided with a longitudinal opening upon one side," so that they "are easily and readily replaced," and one is "always sure of perfect alignment." The specification states that the packing is made of a flat piece of hard oak leather, and "bent and molded by pressure to the required spherical form, * * * so that this split packing will retain its shape, and can be sprung over the wrist [spherical knuckle]," and "twisting and wringing of the packing in the draft eye * * * is entirely avoided." His expert testified:

"The * * * packing, being previously formed under high pressure into substantially the same contour as the knuckle, * * * is capable of being sufficiently sprung or opened to properly assemble the same upon the knuckle, after which it readily springs into engagement. * * * The molding of a packing into a spherical form out of stiff leather, and adapting it for use upon a spherical knuckle, is new, so far as I am advised. It is undoubtedly an advance in the art to construct such a packing, and unquestionably requires special machinery for so constructing it."

This "advance" is but small, and the patent, as we held before, is a "very narrow one." Nevertheless it seemed to us to possess utility. With a flat piece of leather, even though cut to suitable shape and size, there would necessarily be difficulty in adjusting it to the knuckle, holding it down with the fingers evenly on all sides. There would seemingly be liability to slip, to get out of place, to wrinkle or buckle (if the leather were thin) at the moment when the restraining fingers had to be withdrawn upon the closing of the draft eye, with risk of pinching the fingers in the closing jaws of the draft eye. All these difficulties were removed by the packing previously molded out of leather hard enough to retain its shape, and, in view of the fact that it had at once commended itself to the trade—500,000 sets being sold in a short time—this court reached the conclusion that such packing was patentable, despite the disclosure in the prior art of the ironwork of the earlier patent, and the common use of washers. We may have erred in finding invention in so narrow, and possibly obvious, an improvement; but, in limiting the claim as indicated in the former opinion, we are not, upon a reconsideration of the whole case, persuaded that the decision was either erroneous or unjust.

The order of the Circuit Court is reversed, with costs.