LittletoN Judge,
delivered the opinion of the court:
This is a suit for the recovery of just and reasonable compensation for the infringement of certain patents brought under the Patent Act of 1910, as amended by the act of 1918.
This suit was originally brought upon twelve United States letters patents issued to Reginald A. Fessenden and dealing with radio apparatus. The defendant filed a demurrer as to six of the patents set forth in the original petition, namely, reissue no. 12168; reissue no. 12169; nos. 706142, 706746, 706747, and 753863, alleging that the invention upon which these patents were based was made by the inventor Fessenden during the time of his employment by the United States, and, therefore, coming within that section of the patent act of 1910, which provides as follows:
*564 “ Tbat the benefits of this act shall not inure to any patentee, who, when he makes such claim, is in the employment or service of the Government of the United States; or the assignee of any such patentee; nor shall the act apply to any device discovered or invented by such employee during the time of his employment or service.”
This demurrer was sustained in an opinion on the same February 16, 1925. See 60 C.Cls. 338.
Plaintiffs admit that the invention set forth in two other patents, namely, nos. 730753 and 753864, is substantially disclosed in certain patents as to which the above-mentioned demurrer was sustained, and they therefore voluntarily discontinued the taking of testimony under these two patents which by the nature of their disclosure indicate that they are based upon inventions made or discovered by Fessenden during the time he was employed by the United States Government. See finding X.
As the record now stands there are four patents before the court for consideration as regards the questions of validity and infringement. These patents are nos. 1050441 and 1050728, known as the heterodyne patents, no. 727330, known as the buzzer modulation patent, and no. 979144 known as the earth current collector patent.
There is no real issue of title before us. From the records it appears that the title to these patents was transferred prior to July 26, 1912, from the former owners to the National Electric Signaling Company. On the above-mentioned date the United States District Court for the District of New Jersey appointed Samuel M. Kintner and Halsey M. Barrett receivers of this company and under a further order of the district court assigned to the receivers all of the letters patent before this court, together with the right to sue for past infringement, the titles of which were at that time in the National Electric Signaling Company. Subsequent to such an assignment the receivers, Kintner and Barrett, pursuant to an order of the district court for the District of New Jersey, dated September 24, 1917, assigned all of the patents in suit with rights to sue for past infringement to International Signal Company, the name of which was changed on March 4, 1918, to “ Inter *565 national Radio Telegraph Company,” which latter corporate name was again changed, on July 29, 1920, by stockholders’ resolutions to “International Devices Company.”
The right to sue for past infringement is assignable with a patent under section 4898, R.S., and as the assignments in the present instance were made under an order of a district court a transfer of rights has taken place by action of law, and, therefore, does not come within the operation of section 3471, R.S., prohibiting assignments of claims against the United States. Davis Sewing Machine Co. of Delaware v. United States, 60 C.Cls. 201.
In addition to this the case of Richmond Screw Anchor Co. v. United States, 275 U.S., 331, 346, held that section 3477, R.S., does not apply to the assignment of a claim against the United States which is created by the patent act of 1918 insofar as the act deprives the owner of a patent of a remedy against the infringing private contractor for infringements thereof and made the Government indemnitor for its manufacturer or contractor in his infringements.
The assignment records of the Patent Office show that on June 21, 1920, prior to the filing of the petition in this case, International Radio Telegraph Company, who is a lilaintiff in this case under the present name of International Devices Company, sold and assigned the patents in suit to The International Radio Telegraph Company, the assignor corporation reserving the right to sue for past infringements up to June 21, 1920.

Heterodyne patents nos. 10507£8 and 1050hlil

These two patents issued on the same date, January 14, 1915, are directed respectively to a method of apparatus for the transmission of radio signals. A detailed description of the inventions to which these two patents relate would be but a reiteration of finding XV. It is sufficient to state that the heterodyne system and method disclosed in these two patents involve the radiation from the transmitting antenna by what is known as continuous or undamped oscillations of a high frequency order. The electromagnetic waves propagated from the transmitting antenna produce in the re *566 ceiving antenna at the receiving station oscillations of the same frequency. A local generator at the receiving station produces high frequency oscillations differing slightly in frequency from those received from the transmitting station. The difference in frequency between the locally produced oscillations and those received from the transmitting station act to produce a beat note of audible frequency, the tone of which can be readily changed at the receiving station by adjusting the frequency of the local oscillator.
There is no question of the numerous advantages which flow from the use of this system of radio signaling known as the heterodyne method, such as selectivity, variation in pitch of the audible signal received, amplification and overcoming of static disturbance, all of which result in an increased range of transmission. The defendant does not question the validity of these patents.
The Fessenden heterodyne patents nos. 1050441 and 1050728 have been before the courts many times and have repeatedly been held valid. Kintner et al. v. Atlantic Communication Co. et al., 241 Fed. 956; International Signal Co. v. Vreeland Apparatus Co., Inc., et al., 278 Fed. 468; Kintner et al. v. Atlantic Communication Co. et al., 294 Fed. 136; Westinghouse Electric & Mfg. Co. et al. v. Taub, 4 Fed. (2d) 605; Westinghouse Electric & Mfg. Co. et al. v. Precise Mfg. Corp., 11 Fed. (2d) 209.
With reference to prior adjudicated patents the circuit court of appeals in Doelger v. German-American Filter Co., 204 Fed. 274, 276, aptly stated as follows:
“ Few patents have been so persistently attacked and so thoroughly tested in the courts. Every argument which can be urged against it was presented in the prior litigation and carefully considered. Nothing we can say will add to the unanimous conclusion reached by the .courts which have preceded us. The doctrine of stare decisis applies. Though the decisions of other courts are not conclusive upon us,, an orderly administration of the law requires us to follow them when based upon substantially the same facts, unless we are clearly of a different opinion. Mast-Foos Co. v. Stover Co., 177 U.S. 485, 20 Sup. Ct. 708, 44 L.Ed. 856; Beach v. Hobbs, 92 Fed. 146, 34 C.C.A. 248.”
*567 In International Signal Company v. Vreeland Apparatus Company, Inc., et al., supra, the Court of Appeals of the Second Circuit stated that, “ The utilization of the continuous undamped waves and the beats principle marked a very great advance in the art.”
In Kintner v. Atlantic Communication Company, supra, the court stated that “ the ‘ heterodyne ’ is a contribution which will long be appreciated in this remarkable art, which has added so much to the welfare of mankind.”
We concur in the foregoing statements of the courts. There is no doubt as to the validity of these patents.
The evidence shows and the Government also admits in its brief, that in specific instances of Government installations it has undoubtedly utilized the heterodyne principle as part of the receiving system.
Typical claims of these two patents are as follows:
Claim 1, of patent no. 1050441:
“A signaling system having in combination a sustained sending source, and at a receiving station, a constantly operating frequency determining element of a frequency differing from that of the received oscillations.”
Claim 2, of patent no. 1050728:
“ In the art of signaling, the method which consists in making an indication by the interaction of received impulses of sustained frequency and amplitude with impulses of neighboring frequency generated by a constantly acting local source of energy at the receiving station.”
The defendant has had manufactured for it and used at least two different methods or types of receivers involving the heterodyne principle. In one type a single vacuum tube has been used for the dual purpose of rectifying the high frequency beat currents and generating the local oscillation, this being done by a feed-back connection from the plate circuit of the tube to the in-put grid circuit. In a second type a separate vacuum tube has been used as the source of the local high-frequency oscillations.
The terminology of the above claims, as well as other claims in suit, applies with equal facility to both of these *568 types of receiving sets or systems, and both types infringe the patents in suit.
The sole defense raised by defendant in connection with the heterodyne patents is that the heterodyne principle was discovered or invented by Fessenden during the term of his employment with the Government from January 9, 1900, until September 9,1902, and that therefore plaintiffs are not entitled to recover. This defense is predicated upon testimony of Fessenden himself and upon the existence of Fes-senden’s patent no. 706740, application for which was filed September 28, 1901, which patent issued August 12, 1902.
Fessenden’s testimony stands entirely uncorroborated either by the notebooks to which he refers and which are in evidence in this case (see finding XIX) or by those with whom he was associated in the Weather Bureau. As stated in the record “ counsel for the United States has communicated with Major Thiessen, Mr. A. E. Kennelly, and Professor Marvin, who have all stated that they have no recollection of his disclosure to them of the subject matter or principles of the heterodyne during the period 1900-1902.”
In Clark Thread Company v. Willimantic Linen Company, 140 U.S. 481, 486, the Supreme Court stated, with respect to the effort of an inventor to carry the date of his invention back, as follows:
“ The only evidence on the question as to the' time of Co-nant’s invention is his own testimony, a species of evidence which, in cases of this kind, ought to be received, with great caution.
‡ $ $ $ $ ‡ $
“ From this review it is apparent how uncertain and unsatisfactory is the statement made by Conant in his testimony that ‘ the part of my machine called the traverse changer was the same in the first set of drawings as it is in present use.’ It fails entirely to show that, prior to the 22d of July, 1858, he ever had or ever exhibited any drawings of the invention described in the first or third claim of the patent. We conclude, therefore, that there is no proof on which reliance can be placed that Conant made his alleged invention before the publication of Weild’s patent in England.” (Italics ours.)
*569 Patent no. 706740 referred to by defendant’s counsel in an effort to show discovery of the heterodyne invention during the term of employment of Fessenden by the Government, was issued August 12, 1902, more than two years prior to the filing of the Fessenden original application no. 271539 which materialized into the heterodyne patents in suit. If the heterodyne system or method is disclosed in the prior patent to Fessenden no. 706740 the same would not only be effective to negative any rights of plaintiffs but would also be effective as a prior publication to invalidate Fessenden’s heterodyne patents.
Patent no. 706740 discloses a system of radio transmission with both generators of high frequency oscillations located at the transmitting station. Such a system instead of conserving the radiant energy necessary for the transmission of a wireless signal, doubles it, and none of the numerous advantages which flow from the use of a local generator of high-frequency oscillations at the receiving set is apparent from the disclosure in this patent.
We also find that in the case of Kintner et al. v. Atlantic Communication Co. et al., 241 Fed. 956, 958, the. court gave consideration to patent no. 706740 as prior art, stating, with respect thereto, that “ The principle utilized in no. ’706740 was the production of beats by oscillations of slightly différ-ent frequencies, so that the signal tone was that of the difference between the two beat frequencies. Both frequencies were generated at the transmitting station, and thus such a system required a double installation, and, as both signals would arrive with the same loss, amplification of the received signal was not attained by the use of the' second frequency. Further, such a system did hot. afford the receiving operator any means for controlling the tone' of the received signal ”, and holding the. Fessenden heterodyne patents nos. 1050441 and 1050728 valid. We are of the opinion that'the patent no. 706740 does not disclose the invention of the heterodyne patents in suit. No satisfactory, evidence has been presented which carries either dáte of conception or reduction to practice of the heterodyne invention in suit back *570 of January 27, 1905, the filing date of Fessenden’s application no. 271539.
There is no satisfactory evidence that Fessenden either conceived of or reduced to practice the inventions disclosed and claimed in heterodyne patents nos. 1050441 and 1050728 in suit during the period of his employment with the Government.

Buzzer Modulation Patent No. 727330

The invention disclosed in this patent relates to a form of radiotelegraphy in which a continuous high frequency oscillation is supplied by a suitable generator coupled to a transmitting antenna. The generator is connected to the antenna through a resistance which is periodically short-circuited by an interruptor device operating at an audible periodicity, the current interruptor thus functioning to produce a periodical modulation in the character of the radiated carrier wave from the transmitting station, the frequency of the carrier wave being of a high frequency order well above audible frequency.
The claims in suit of this patent are as follows:
“ 1. In a system of signaling by electromagnetic waves, the method herein described, which consists in varying the character of radiation periodically at a rate independent of the natural periodicities of the system.
$ $ ‡ $
“ 5. In a system of signaling by electromagnetic waves, the method herein described which consists in periodically varying the character of the radiation at a sending station at a periodicity independent of the generating force.”
The facts show that the Government has used transmitting sets involving the use of vacuum tubes to produce high frequency oscillations for the purpose of radiating a continuous or undamped carrier wave from the transmitting antenna, and has superimposed thereon .a periodical variation at audible frequency, these sets using a circuit interruptor or what is known in electrical parlance as a “ buzzer ” to produce the audible tone. This buzzer is connected into the primary of a transformer the secondary of which is connected to the *571 grid or control circuit of the vacuum tube so that the modulations produced by the buzzer are superimposed upon the carrier wave thus causing its modulation at audible frequency. The system and apparatus used in the Government sets clearly come within the terminology of the above-named claims.
During the period of employment of Fessenden by the Government, he filed an application dated September 28, 1901, which materialized into patents nos. 753863 and 706747, the latter maturing from a divisional application arising from the aforesaid original application. This court has already held in 60 C.Cls. 338, that patent no. 706747 was based upon an invention made by Fessenden during the time of his employment by the United States.
Under the terms of the patent act of 1910 a plaintiff is barred from recovery of any compensation for the use of an invention or discovery made during his employment by the Government. In the present instance it becomes necessary to consider Fessenden’s patent no. 706747 with reference to the structure utilized by the Government and which has just been considered in connection with claims 1 and 5 of the buzzer modulation patent in suit.
Patent no. 706747 discloses a radio signaling system in which a continuous carrier wave is emitted from the transmitting antenna the same being produced by a source of high frequency oscillations at the transmitting station. A system of modulating the carrier wave is obtained by connecting to the antenna circuit the secondary of a transformer, the primary of which has intercalated into its circuit a current modulation device. This portion of the apparatus is defined by the patentee as follows:
“A second coil 7, forming a part of the circuit for the battery 8, is placed on the core 3, and a transmitter 9, preferably microphonic in construction, or other mechanism capable of modifying the current in the circuit is included in the circuit of the battery and coil 7.” (Italics ours.)
The patentee also states with reference to' the modulation device to be used for modulating the carrier wave, that, “ Many ways of modifying or changing the waves will *572 readily suggest themselves to those skilled in the art, and hence as regards the broader features of my invention I do not limit myself to any particular mechanism for modifying the waves or impulses. The term ‘ signaling ’ is used herein in a broad sense, and especially as including the transmission and receipt of words, sounds, characters, etc.” (Italics ours.)
Patent no. 753863 carries the method claims pertaining to the apparatus and system disclosed in patent no. 706747, it having been stated, supra, that patents nos. 706747 and 753863 materialized from the same original application thus having a common origin. A comparison of claim 1 of patent no. 753863 with claim 1 of the buzzer modulation patent in suit, no. 727330, is as follows:
Claim 1, No. 753863:
“As an improvement in the art of signaling by electromagnetic waves the method herein described which consists in the practically continuous transmission and reception of electromagnetic waves or impulses, and modifying or changing the Character of such waves or impulses without interruption of their continuity, substantially as set forth.”
Claim 1, No. 727330:
“ In a system of signaling by electromagnetic waves the method herein described, Avhich consists in varying the character of radiation periodically at a rate independent of the natural peri-odicities of the system.”
A comparison of these claims shows that the monopoly expressed by the claim in suit differs from the monopoly expressed in claim 1 of the Fessenden patent no. 753863 which the Government is entitled to use without compensation to plaintiffs under the act of 1910 only by the fact that the modulation defined by the claim in suit is periodical in nature. If the former patent no. 753863 is limited to radiotelephony and involves and discloses voice modulation only, which is nonperiodical in character, which is what plaintiffs urge in connection with consideration of this patent, the periodical modulation which seems to be the only distinguishing feature between the buzzer modulation patent and this prior patent, might involve the use of the inventive faculty, and form the basis of a separate and specific inven *573 tive improvement over the generic invention expressed by Fessenden’s prior patent no. 706747.
If on the other hand the disclosure of Fessenden’s prior patents nos. 706747 and 753863 is sufficiently broad in scope to enable the man skilled in the art with his electrical knowledge as of the issue date of these patents, to utilize a periodical modulation as well as a voice modulation, no recovery can be had, plaintiffs being precluded from any compensation by the patent act of 1910 for any modifications or alterations that may be made by a mechanic skilled in the art in the practice of the invention disclosed in Fes-senden’s prior patent no. 706747 based upon an invention made by Fessenden during his employment with the Government in the capacity of a radio experimentalist.
A study of the disclosure of Fessenden’s prior patent no. 706747 leads us to this latter conclusion. From the portion quoted, supra, of the prior Fessenden patent no. 706747, it is clear that Fessenden did not consider his invention limited to nonperiodical modulation, such as voice transmission, for he clearly instructs those skilled in the art that not only may a microphonic transmitter be used but that in lieu of this “ other mechanism capable of modifying the current ” might he used. He also, as indicated, explains and suggests to those skilled in the art that many ways of modifying or changing the waves will suggest themselves and that he does not limit himself to any particular mechanism for producing the modulation, and that his system as disclosed is not only for the transmission of words but for sounds or characters as well. Such language thus employed by the inventor as he addresses himself to those skilled in the art is clearly a suggestion that they may use any device coming within their knowledge for producing modulation.
The record in the testimony is silent upon the pertinent fact of whether an electric buzzer was well known to those skilled in the art at the time of the issuance of Fessenden’s prior patent no. 706747. This in the present instance, however, is an elementary detail of which we will take judicial notice.- Colorado Tent & Awning Co. et al. v. Parks et al., 195 Fed. 275; Bradley v. Eccles et al., 139 Fed. 447, 449. It is common everyday knowledge that electric door bells *574 and buzzers have been in use for many years prior to the issuance of Fessenden’s prior patent no. 706747. In this connection we find on page 259 of the Standard Dictionary published by Funk & Wagnalls, in 1898, the following definition:
“ Electric buzzer: A call or signal making a buzzing sound produced by an automatic electric make and break.”
We also find in the Standard Electrical Dictionary published by Munn & Company in 1900, an electric buzzer not only defined on page 94 but illustrated as well, the definition reading as follows:
“ An electric alarm or call produced by a rapid vibration of electric make and break mechanism, which is often magnified by enclosure in a resonating chamber, resembling a bell, but which is not struck or touched by the vibrating parts. Sometimes a square wooden bos is used as resonator.”
We are of the opinion that in view of the suggestions contained in the disclosure of the Fessenden prior art patents, which suggestions in effect amount to invitations to the man skilled in the art to the use of any other type of device to modify current flow in modulating system that came within his knowledge that it would not require the use of any inventive faculty to use the well-known buzzer which in itself may be properly defined as a periodical current modulating instrumentality, and that the Government can make use of such periodical modulation as would thus be obtained by the disclosure of the prior Fessenden patent no. 706747, without compensation to plaintiffs.
For these same reasons and from this same line of deduction we conclude that the buzzer modulation patent no. 727830 is invalid as to claims 1 and 5 in suit, because of prior disclosures in patent no. 706747 which was issued without any reservation clauses as to periodical modulation.

Earth Current Collector Patent No. 979m

This patent relates to a receiving antenna or a radio receiving station. The structure disclosed as specific embodi *575 ment of the invention in suit comprises a plurality of horizontal wires radiating from a central point and in the language of the patentee “ stretched at no great distances from the ground and approximately parallel thereto.” The outer ends of these wires are grounded and a signal detecting device is connected to the wires at their central point. The patentee also indicates as a preferable structure the use of an iron plate or sheet of high magnetic permanability laid on the ground or supported adjacent thereto and covering the space beneath the wires, although there is stated in this connection with this sheet that the apparatus will operate without the sheet but much less efficiently. The operation of this antenna structure is predicated upon a theory that there is a component of the electromagnetic wave flowing through the earth’s surface which is diverted through the antenna and into the radio-receiving device. The single claim in suit is as follows:
“ 1. In a system for the transmission of energy by electromagnetic waves, a receiver and means for diverting and utilizing in said receiver the energy of the surface currents produced by electromagnetic waves.”
The record indicates a difference in opinion between the experts as to the correctness of the patentee’s theory in regard to the propagation of a component of the electromagnetic waves through the earth’s surface. The correctness or incorrectness of such theory, however, is immaterial to the questions in issue of validity and infringement. It has frequently been held that a patentee is not bound by any theory of operation which he may have at the time of issuance of a patent. The sciences are continuously advancing and theories of operation which while thought correct one day, are often found to be subsequently erroneous.
The sole question, therefore, before us is dependent upon a question of structure and not of theory. Has this horizontal antenna system, as disclosed in this patent in suit, been used by the Government, and if so, does its construction represent patentable novelty? The record shows that the defendant has used three general forms of antennae closely resembling that disclosed in the patent in suit.
*576 The defendant has used horizontal wires extending in opposite directions parallel to and either adjacent to or buried beneath the ground with a receiving set connected to the central point. It has also used a horizontal wire extending in one direction. There is no satisfactory evidence to show that these wires were directly connected to the ground at their outer ends as is the case in the Fessenden patent no. 979144 in suit.
A type of antenna used by the defendant on submarines is one in which two antenna wires extend fore and aft from a central elevated point, the fore and aft wires being inclined respectively to the bow and stern of the submarine, the same being grounded at these points.
In the first two forms of the Government structure just described, the antenna system is practically identical with that disclosed in the prior art patents to Marconi, nos. 14788' and 16655, of 1905. If the interpretation placed upon claim 1 of this patent in suit be given a sufficient breadth or scope to apply to the first two mentioned Government structures, it would apply with equal facility to the prior art as illustrated by Marconi’s British patents and thus be rendered invalid. The claim is more readily applicable to the form of the Government structure, i.e., the submarine antenna which is grounded at its outer ends. In this connection, however, attention is directed to the prior art patent to Braun, no. 750429, issued January 26, 1904, more than two years prior to the filing date of the application which matured into Fessenden’s patent no. 979144 now under consideration. This patent discloses almost the exact structure of the patent in suit.
The Braun prior art patent no. 750429 specifically mentions in line 27, page 1, the use of a current of “ high frequency ” and in the preferred embodiment shown in fig. 6 shows radiation or propagation from a transmitting antenna or system comprising spaced plates buried in the ground.
For purposes of comparison fig. 1 of Fessenden’s patent no. 979144 and fig. 6 of the prior art patent 750429 to Braun are shown as follows:
*577 Fessenden’s Patent in Suit No. 979144

It will be seen that the receiving apparatus disclosed in the Braun patent comprises a coherer or detector F having its opposite ends connected by horizontal extending wires having their remote ends connected to spaced or separated ground plates. The similarity between the Braun disclosure and the Fessenden patent no. 979144, when contemplated with the iron sheet omitted, is evident and no patentable novelty can be predicated upon claim 1 as interpreted by the disclosure of the Fessenden patent no. 979144 now under consideration. In view of the prior patent of Braun it is accordingly held that claim 1 in this patent in suit is invalid.
On the questions now before the court we conclude (1) That Fessenden’s patents nos. 979144 and 727330 are invalid as to the claims in suit, and the petition should be dismissed in respect to these patents. (2) That the hetero-dyne patents nos. 1050441 and 1050728 are valid and infringed and plaintiff is given judgment thereon. The case is referred to a commissioner with instructions to take proof *578 with respect to the amount of compensation due the International Devices Company for a period extending from February 5,1917 (six years prior to the filing of the original, petition in this case) to June 21, 1920, at which time plaintiffs sold the patents in suit.
It is so ordered.
Whaley, Judge; Williams, Judge; and Green, Judge, concur.
Booth, Chief Justice, took no part in the decision of this-case on account of illness.